***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Baddour with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Zurich Insurance Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained a compensable rotator cuff injury to his left shoulder on June 17, 2003, while performing his job as a truck driver. Industrial Commission File number 456073 was assigned to the left shoulder claim.
5. Plaintiff sustained a compensable rotator cuff injury to his right shoulder on April 19, 2005, when he stumbled and struck his right shoulder against a dumpster. Industrial Commission File number 528358 was assigned to the right shoulder claim.
6. Defendants paid the following compensation to plaintiff, which the defendants designated as:
 a. TTD in the amount of $489.68 per week from June 18, 2003 to July 7, 2003;
 b. TPD in the amount of 2/3 the difference between wages earned and $734.48 per week from July 8, 2003 to September 29, 2003;
 c. TTD in the amount of $489.68 per week from September 30, 2003 to November 3, 2003;
 d. TPD in the amount of 2/3 the difference between wages earned and $734.48 per week from November 4, 2003 to June 18, 2004;
 e. TTD in the amount of $489.68 per week from June 21, 2004 to July 6, 2004;
 f. TPD in the amount of 2/3 the difference between wages earned and $734.48 per week from July 7, 2004 to August 12, 2004; *Page 3 
 g. TTD in the amount of $489.68 per week from August 13, 2004 to December 27, 2004;
 h. TPD in the amount of 2/3 the difference between wages earned and $734.48 per week from December 28, 2004 to April 26, 2005; and
 i. TTD in the amount of $489.68 per week from April 27, 2005 to September 8, 2005.
7. On September 16, 2005, defendants filed a Form 28T, giving plaintiff and the Commission notice that plaintiff had returned to a trial return to work period beginning September 8, 2005 at the reduced wages of $360 per week.
8. On June 9, 2006, plaintiff filed a Form 28U, wherein Dr. Curzan signed the Form 28U certifying that plaintiff was unable to continue the trial return to work.
9. As of September 9, 2005, defendants changed the average weekly wage they were using from $734.48 per week to $572.06, and paid the following compensation to plaintiff, which defendants designated as:
 a. TPD in the amount of 2/3 the difference between the wages earned and $572.06 per week from September 9, 2005 to September 12, 2005;
 b. TTD in the amount of $381.39 per week from September 13, 2005 continuing through the present.
10. Plaintiff filed a "Motion to Reinstate Temporary Total Disability" on January 1, 2006. On April 6, 2006, Executive Secretary Tracey H. Weaver denied plaintiff's Motion. Plaintiff filed a Motion for Reconsideration on April 27, 2006, which Executive Secretary Weaver denied on June 8, 2006. *Page 4 
11. Plaintiff filed a Form 33 in both I.C. Files 456073 and 528358 on April 26, 2006, and defendants filed a Form 33R on April 28, 2006.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Defendants' Discovery Responses
 (d) Stipulated Exhibit 4: Response from Dr. Curzan signed May 1, 2006
 (e) Stipulated Exhibit 5: April 28, 2004 Letter from Carrier to Dr. Curzan
 (f) Plaintiff's Exhibit 1: Calendar for 2003
 (g) Plaintiff's Exhibit 2: Plaintiff's pay stubs for pay periods of January 5, 2003 through June 8, 2003
 (h) Plaintiff's Exhibit 3: Affidavit of Plaintiff's Counsel
 (i) Pursuant to paragraph 2(a) of the Pre-Trial Agreement, judicial notice is taken of all Industrial Commission forms, pleadings and orders in I.C. Files 456073 and 528358 including but not limited to:
 a. Form 19 dated July 28, 2003 (for June 17, 2003 injury);
 b. Form 19 dated April 25, 2005 (for April 19, 2005 injury);
 c. Form 25N dated May 27, 2005;
 d. Form 60 dated September 16, 2005 (for June 17, 2003 injury);
 e. Form 60 dated September 16, 2005 (for April 19, 2005 injury);
 f. Form 28T dated September 16, 2005; *Page 5 
 g. Form 28U dated June 9, 2006;
 h. Form 33 dated April 26, 2006; and
 i. Form 33R dated April 28, 2006.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer as a truck driver on or about September 19, 2002. He was hired for a ninety (90) day probationary period. During his probationary employment, plaintiff drove trucks, but performed mostly "yard moves" and short runs.
2. Plaintiff's probationary employment ended on or about December 18, 2002, and he was retained as a permanent employee. Shortly after his probationary period expired, plaintiff's job duties changed from the "yard moves" and short runs to a trucking run from Apex, North Carolina to Sanford, North Carolina.
3. Defendants provided wage documentation for plaintiff but did not provide a Form 22 from which to determine any periods of seven or more consecutive days that plaintiff was out of work. Based upon Stipulated Exhibit 3 and Plaintiff's Exhibit 2, following the Christmas and New Year's holidays, plaintiff earned $18,114.75 as a permanent employee during the twenty-two (22) week period from January 5, 2003 through June 8, 2003. Defendants did not provide any wage documentation for the pay period beginning on June 9, 2003 through the date of plaintiff's injury on June 17, 2003. *Page 6 
4. Plaintiff's average weekly earnings were $823.40 for the pay period of January 5, 2003 through June 8, 2003. Based upon the available information, the undersigned find that this amount most nearly approximates the amount that plaintiff would be earning were it not for his left shoulder injury.
5. After plaintiff's injury to his left shoulder on June 17, 2003, he went to Urgent Care in Smithfield. Plaintiff was given a note to perform only light duty work. Plaintiff presented the work note to the defendant-employer's trucking terminal manager, Bud Lindlow. Mr. Lindlow told plaintiff that defendant-employer did not have any light duty jobs available.
6. Approximately three weeks later, the defendant-employer's head of dispatching and safety called plaintiff and stated that he and the trucking terminal manager had "put their heads together" and come up with a job for plaintiff, which was issuing supplies out of the drivers' trailer. This job had previously been one of the duties of the mechanic position. Plaintiff performed this job for defendant-employer until September 2003.
7. In September 2003, plaintiff was moved from the drivers' trailer job to the dispatcher's office. In this job, plaintiff assisted with the drivers' paperwork during the night shift. This new document processing job in the dispatcher's office had previously been part of the dispatcher's job requirements. Plaintiff worked in the dispatcher's office until he went out of work for left rotator cuff repair surgery on October 1, 2003.
8. Plaintiff was out of work as a result of his compensable left shoulder surgery until November 4, 2003, when he returned to the dispatcher's office job.
9. Plaintiff returned to Dr. Curzan on February 10, 2004. Dr. Curzan stated in his office note that a MRI done on February 2, 2004 "indicates what appears to be a re-tear of the *Page 7 
rotator cuff." Dr. Curzan referred plaintiff to Dr. Carl Basamania at Duke Medical Center, and stated, "I feel this complex shoulder is best treated in the hands of a shoulder expert."
10. On March 4, 2004, Dr. Basamania examined plaintiff and recommended that he undergo physical therapy, with a follow-up with Dr. Basamania in eight weeks.
11. Plaintiff returned to Dr. Curzan on March 8, 2004, who stated that he had not yet received a copy of Dr. Basamania's review, but that plaintiff "will seek any additional care from Dr. Basamania as it pertains to a possible shoulder replacement."
12. On March 22, 2004, Dr. Curzan completed a Form 25R, forwarded to him by the carrier. Dr. Curzan stated that plaintiff was entitled to a forty percent (40%) permanent partial disability rating of the left arm.
13. The defendant-carrier wrote Dr. Curzan a letter on April 28, 2004 stating the following:
 This letter is in response to your disability rating assigned March 22, 2004. Please be advised, Mr. Womble continues to treat with Dr. Carl Basamania at Duke University per your referral. Dr. Basamania has directed Mr. Womble to continue therapy to strengthen his rotator cuff tear and is scheduled to follow up for the first part of May. Based on this information, I ask you rescind the information disability rating you assigned, based upon the fact that Mr. Womble obviously has not reached maximum medical improvement.
14. On or about August 17, 2004, plaintiff was again taken out of work by Dr. Basamania as a result of his compensable left shoulder injury. Plaintiff remained out of work through December 27, 2004.
15. Plaintiff returned to work in the dispatcher's office on or about December 28, 2004 and worked in the office through April 26, 2005, the day before he had left shoulder replacement surgery. *Page 8 
16. On April 19, 2005, one week before plaintiff went out of work for his left shoulder surgery, he sustained a compensable rotator cuff injury to his right shoulder. However, plaintiff continued to work following his right shoulder injury until he went out of work beginning April 27, 2005 for his left shoulder surgery.
17. Upon plaintiff going out of work on April 27, 2005 for his left shoulder surgery, defendants reinstated plaintiff's total disability compensation based upon an average weekly wage of $734.48. This is the average weekly wage that defendants had previously calculated for plaintiff's left shoulder injury.
18. Following his left shoulder surgery, plaintiff never returned to work as a document processor in the dispatcher's office. Bud Lindlow, the defendant-employer's former terminal manager and present southeastern safety and human resources manager, testified that plaintiff was never offered a permanent job in the dispatcher's office. Mr. Lindlow further testified that a document processor position pays a lower hourly rate than a truck driver position and also does not require as many work hours per week, but that defendant-employer had continued to pay plaintiff at the same hourly rate as a truck driver, because the defendant-employer was waiting to see if plaintiff was going to be able to go back to work as a truck driver. Mr. Lindlow also testified that the physical requirements of a truck driver are much greater than those of a document processor.
19. On August 11, 2005, Dr. Basamania noted that plaintiff's left shoulder had a "down turn in function" and recommended that plaintiff "continue working very hard in physical therapy." Dr. Basamania also gave plaintiff a note restricting him from returning to work until at least November 15, 2005. *Page 9 
20. Dr. Curzan initially treated plaintiff's right torn rotator cuff. On August 15, 2005, Dr. Curzan noted that Dr. Basamania wanted him to wait approximately two more months before performing surgery on the right shoulder to give the left shoulder more time to heal from the left shoulder replacement surgery.
21. On August 23, 2005, the defendant-carrier requested that Dr. Basamania complete a work restriction form provided by the defendant-carrier. Dr. Basamania assigned the following restrictions based upon plaintiff's left shoulder condition: limit work to 4-6 hours per day with no lifting, grasping or torquing; occasional pushing and pulling, simple grasping, and fine manipulation; and frequent squatting, kneeling, stooping and bending.
22. On Friday, September 9, 2005 and Monday, September 12, 2005, at the defendant-employer's request, plaintiff returned to work for two days at a hurricane relief trailer in front of a grocery store.
23. Prior to returning to work for two days in the hurricane relief trailer in September 2005, plaintiff had been receiving ongoing total disability compensation since April 2005 based upon an average weekly wage of $734.48 for his left shoulder injury. After plaintiff worked the temporary two-day hurricane relief trailer job, defendants reinstated plaintiff's total disability compensation on September 13, 2005, but at a reduced rate based upon an average weekly wage of $572.06. Defendants calculated the reduced average weekly wage based upon plaintiff's April 19, 2004 date of injury for his right shoulder. At the time of the hearing before the deputy commissioner, defendants were paying plaintiff ongoing total disability compensation at the reduced rate.
24. Defendants assert that the change in average weekly wage was proper because the disability plaintiff incurred subsequent to September 12, 2005 is due to his being taken out of *Page 10 
work by Dr. Curzan for the right shoulder injury. Defendants apparently assert that plaintiff's two days of work in the hurricane relief trailer demonstrate sufficient earning capacity that, upon the expiration of the temporary two-day job, plaintiff was not entitled to a reinstatement of total disability compensation for his left shoulder condition. The undersigned do not find defendants' position persuasive for the following reasons: At the time plaintiff worked for two days in the hurricane relief trailer in September 2005, he had been receiving ongoing total disability compensation based upon his left shoulder injury since going out of work in April 2005 for left shoulder surgery. In September 2005, plaintiff remained under significant work restrictions for his left shoulder which prevented him from working more than 4-6 hours per day, and which prevented him from doing any lifting, among other numerous restrictions. The hurricane relief trailer job was clearly a two day temporary position and cannot be asserted as the basis for determining that plaintiff was no longer disabled due to his left shoulder injury.
25. On January 11, 2006, Dr. Curzan performed surgery to attempt to repair plaintiff's torn right rotator cuff, but deemed the tear irreparable.
26. On April 4, 2006, Dr. Basamania stated in his office note that plaintiff had reached maximum medical improvement regarding his left shoulder. Dr. Basamania stated that plaintiff has a thirty-five percent (35%) permanent partial disability rating of the left arm, and assigned permanent work restrictions of no use of the hand above shoulder height, no lifting more than 5 pounds from waist level to shoulder height, no repetitive use of the arm, no work requiring the arm to be used away from the body, no lifting of more than 15 pounds from floor to waist level, that the work environment should include no unprotected heights, no climbing ladders or walking on catwalks, and no kneeling, crawling or stooping. *Page 11 
27. On May 1, 2006, Dr. Curzan signed a form confirming his opinion that plaintiff did not reach maximum improvement for his left shoulder in March 2004 as contended by the defendants.
28. Dr. Curzan also referred plaintiff to Dr. Basamania for the right rotator cuff tear, and as of the date of hearing before the deputy commissioner, Dr. Basamania had scheduled right shoulder replacement surgery for October 25, 2006. Dr. Basamania has assigned the same restrictions for plaintiff's right arm as he assigned to plaintiff's left arm on April 4, 2006.
29. Based upon the totality of the medical and other evidence of record, the undersigned find that plaintiff has been totally disabled since September 12, 2005 as a result of his left and right shoulder injuries.
30. The undersigned find that defendants have defended this claim with reasonable grounds and plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As plaintiff worked less than fifty-two (52) weeks prior to his left shoulder injury, plaintiff's average weekly wage for this injury should be computed using a method that is fair both to plaintiff and defendants. Based upon the wage documentation that is available, the fairest method of computing plaintiff's average weekly wage is to add together his earnings for the twenty-two (22) week period that he worked as a permanent employee after the holiday season and prior to his left shoulder injury (January 5, 2003 through June 8, 2003) and divide *Page 12 
that sum by twenty-two (22). Because plaintiff's earnings as a permanent employee most nearly approximate the amount he would be earning were it not for the injury, plaintiff's earnings while a temporary employee should not be included in the calculation. Although plaintiff became a permanent employee on or about December 18, 2002, it is fair to begin the calculation after the holiday season because defendants did not provide a Form 22 from which to determine any periods of seven or more consecutive days that plaintiff was out of work during the holiday season. Additionally, defendants did not provide any wage documentation for the pay period beginning on June 9, 2003 through the date of plaintiff's injury on June 17, 2003; therefore, this period of time cannot be included in the calculation. Based upon the foregoing, plaintiff has an average weekly wage for his left shoulder injury of $823.40, yielding a compensation rate of $548.96. N.C. Gen. Stat. §97-2(5).
2. As a result of his compensable left shoulder injury, plaintiff is entitled to disability compensation based upon an average weekly wage of $823.40 from June 17, 2003 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Defendants have defended this claim with reasonable grounds and plaintiff is not entitled to attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay disability compensation to plaintiff as follows:
 a. An additional $59.28 per week for all the weeks identified in stipulated paragraph six that plaintiff was paid what defendants identified as TTD; *Page 13 
 b. Two-thirds of the difference between $823.40 per week and the wages earned by plaintiff for all the weeks identified in stipulated paragraph six and nine that plaintiff was paid what defendants identified as TPD, less a credit for such benefits previously paid;
 c. An additional $167.57 per week from September 13, 2005 through the date of the Award by the deputy commissioner;
 d. $548.96 per week from the date of the Award by the deputy commissioner until plaintiff returns to suitable employment or until further Order of the Industrial Commission.
2. Defendants shall pay to plaintiff's counsel as a reasonable attorney's fee an amount equal to twenty-five percent (25%) of the net past compensation owing to plaintiff and twenty-five percent (25%) of the future compensation owing to plaintiff. Said attorney's fee shall be deducted from the funds due to plaintiff.
3. Defendants shall pay the costs due the Commission.
This the 17th day of December, 2007.
S/ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/ CHRISTOPHER SCOTT COMMISSIONER *Page 14 
 S/ DIANNE C. SELLERS COMMISSIONER
 *Page 1